**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------x
                             :
ANNABELLE NIEVES             :      Civ. No. 3:14CV01736(SALM)
                             :
v.                           :
                             :
CAROLYN W. COLVIN, ACTING    :      February 10, 2016
COMMISSIONER of the SOCIAL   :
SECURITY ADMINISTRATION      :
                             :
-----------------------------x
```

**<u>RECOMMENDED RULING ON CROSS MOTIONS</u>**

Plaintiff Annabelle Nieves ("plaintiff") brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Act. Plaintiff has moved for an order reversing the decision of the Commissioner, or in the alternative, for remand for rehearing. The defendant has moved to affirm the decision of the commissioner.

For the reasons set forth below, Plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing [Doc. #21] is **DENIED**. Defendant's Motion to Affirm the Decision of the Commissioner [Doc. #26] is **GRANTED**.

I.   **ARGUMENTS BY PLAINTIFF'S COUNSEL REGARDING THE LAW DEFINING "ACCEPTABLE MEDICAL SOURCE"**

Before engaging in the analysis necessary to address the merits of the parties' claims, the Court feels constrained to address an argument raised repeatedly by plaintiff's counsel. In her main brief, the plaintiff argued that the Administrative Law Judge ("ALJ") erred in his assignment of weight to a Licensed Clinical Social Worker ("LCSW") who treated the plaintiff in a group therapy setting. Counsel stated: "The ALJ also said that 'Counselor Tuers is not an "acceptable medical source" within the meaning of the regulations (SSR 06-03p).'" [Doc. #21-1 at 14] At oral argument, the Court suggested that the ALJ was correct that LCSW Tuers is not an "acceptable medical source" because LCSW Tuers is a social worker, not a "doctor or a psychologist." Counsel stated: "I actually believe that she is a psychologist. ... [S]he's a therapist." The Court stated that the definition of "acceptable medical source" does not include LCSWs. Counsel responded: "So actually I believe that in the Second Circuit, Your Honor, it does include therapists. I believe the only exclusion to that is marriage and family therapists, which I think Ms. Tuers is not." The Court requested that counsel provide authority for that proposition, as the Court was aware of cases suggesting otherwise. Counsel was unable to do so. The Court directed counsel to 20 C.F.R.

2

§404.1513, which defines "acceptable medical sources" to include physicians and psychologists but not LCSWs, and provided a case citing the regulation, and supporting this notion, Halmers v. Colvin, No. 3:12CV00288(MPS), 2013 WL 5423688 (D. Conn. Sept. 26, 2013).

Shortly after oral argument in this matter, counsel for the plaintiff filed a supplemental memorandum arguing, again, that "the ALJ erred in saying that therapist Angela Tuers is not an acceptable medical source." [Doc. #37 at 1] Counsel cited DeLeon v. Secretary of Health and Human Services, 734 F.2d 930, 937-38 (2d Cir. 1984), to support the proposition that, under Second Circuit law, the "treating physician rule" applies "to the opinions of treating Mental Health Professionals." [Doc. #37 at 1]

Thus, throughout the process -- in her original brief, at oral argument, and in a supplemental memorandum -- counsel for the plaintiff has doggedly pursued the theory that a LCSW is an "acceptable medical source" rather than an "other source" under the law. At no time did counsel alert the Court to the July 7, 2015, decision issued in Kelsey v. Colvin, 3:14CV00867(MPS)(DFM) ("Kelsey"), a case in which Attorney Yelner was also representing the plaintiff. In Kelsey, plaintiff's counsel argued that the ALJ had given insufficient weight to the opinion of a therapist. In her argument in Kelsey, counsel cited a case

3

holding that a social worker is not an "acceptable medical source" but is rather an "other source." See Kelsey, Doc. # 15-1 at 15-16 (citing Rodriguez v. Astrue, No. 11CV770(CM)(MHD), 2012 WL 4477244 (S.D.N.Y. Sept. 28, 2012)).[1] However, after oral argument in Kelsey, counsel apparently pursued the claim that her client's therapist was an "acceptable medical source" entitled to treating physician deference. The Court (Martinez, J.) issued a ruling addressing this argument directly:

> The ALJ did not err by assigning less than controlling weight to [treating therapist, non-physician] Mr. Hoffman's opinion because the treating physician rule applies only to "acceptable medical sources" under 20 C.F.R. § 404.1513. As a licensed marriage and family therapist, Mr. Hoffman is not an "acceptable medical source." Rather, he is characterized as an "other source."
>
> Plaintiff argues that DeLeon v. Secretary of Health & Human Services, 734 F.2d 930 (2d Cir. 1984), holds that the treating physician rule applies generally to the opinions of mental health professionals. DeLeon is distinguishable for several reasons. The medical opinions at issue in that case were those of the claimant's psychiatrist, case manager, and rehabilitation counselor. The Second Circuit held that the ALJ "failed to give sufficient weight to the evidence of the treating mental health professionals and gave no justification for not doing so." Id. at 938. The real error highlighted in DeLeon was that the ALJ failed to give the required weight to the claimant's treating mental health professionals, and

---

[1] The Court notes that counsel did not provide the Westlaw cite or the correct date of publication of the Rodriguez decision in the brief she filed in Kelsey. It is also notable that counsel did not cite the Rodriguez case -- which concerns social workers, and is thus directly on point -- to the Court in arguing the instant matter.

> instead relied solely on the evidence presented by the
> consulting physician and vocational expert. DeLeon
> does not stand for, nor can it be inferred from the
> opinion, that a licensed marriage and family therapist
> is a mental health professional whose opinion is
> subject to the treating physician rule.
>
> To the contrary, this court previously has held that a
> licensed marriage and family therapist is not an
> "acceptable medical source" under the regulations and
> that such an opinion is not entitled to controlling
> weight under the treating physician rule. See, e.g.,
> Halmers v. Colvin, No. 3:12CV00288(MPS), 2013 WL
> 5423688, at *10 (D. Conn. Sept. 26, 2013)[.]

Kelsey, Doc. #32 at 3-5. This ruling was issued on July 7, 2015,

and adopted by the District Judge over plaintiff's objection on

September 29, 2015. Counsel for the plaintiff filed her brief in

this case on August 14, 2015. [Doc. #21]

It is abundantly clear to the Court that counsel for the

plaintiff knew, at the time she filed her main brief in this

case, and at the time of oral argument, and at the time she

filed her supplemental memorandum, that both the regulations and

relevant Second Circuit law provide that a social worker or LCSW

is not an "acceptable medical source" but rather an "other

source," as found by the ALJ. Counsel was aware of the Rodriguez

decision, specifically addressing social workers, as she had

recently cited it to the Court in another matter. Counsel was

surely aware of the ruling issued by Judge Martinez in Kelsey,

as it was issued only weeks before counsel filed her brief in

this case. Kelsey makes clear that DeLeon does not stand for the

5

proposition that all mental health professionals are entitled to treating physician deference. Yet, counsel has persisted in that argument, and failed to bring the Kelsey decision to the attention of the undersigned. Counsel also failed to correct her error of law after the Court brought the controlling regulation to her attention at oral argument. These failings are of great concern to the Court. See Connecticut Rules of Professional Conduct 3.3(a)(1) (A lawyer shall not knowingly "fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]"); 3.3(a)(2) (A lawyer shall not "[f]ail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel[.]").

The law on this point is clear. The applicable regulation lists those treating providers who are considered "acceptable medical sources." **Licensed Clinical Social Workers are not included in that list**. There is no need for further discussion. The insistence of plaintiff's counsel in pursuing this argument has needlessly wasted the time of the Court. Counsel is advised that if she is now, or in the future becomes, involved in a case in which she argues that the treating physician rule should be applied to a professional such as a LCSW, a therapist, or any other professional not listed in 20 C.F.R. §404.1513, she must

bring both this decision and the Kelsey decision to the attention of the presiding Court. **Failure to do so may result in the imposition of sanctions.**

The Court will now proceed to the merits of this matter.

## II.  ADMINISTRATIVE PROCEEDINGS

The procedural history of this case is not disputed. Plaintiff filed concurrent applications for DIB and SSI on January 10, 2011, alleging disability as of January 5, 2009.[2] [Certified Transcript of the Record, Compiled on March 11, 2015, Doc. #17 (hereinafter "Tr.") 139] Her applications were denied initially on August 2, 2011, and upon reconsideration on February 28, 2012. Id. Plaintiff timely requested a hearing before an ALJ on April 25, 2012. Id.

On February 27, 2013, ALJ Edward F. Sweeney held a hearing at which plaintiff appeared with an attorney and testified. [Tr. 178-225] Vocational Expert ("VE") Dr. Steven B. Sachs also appeared and testified. [Tr. 213-17] On April 26, 2013, the ALJ found that plaintiff was not disabled, and denied her claims. [Tr. 139-50] Plaintiff filed a timely request for review of the

_____

[2] Plaintiff's last date insured was June 30, 2014. [Tr. 398] As plaintiff accurately asserts in her brief, DIB benefits may be awarded if plaintiff "became disabled before her date last insured of June 30, 2014 and remained disabled for a year thereafter. She can be awarded SSI if she was disabled on the filing date of her SSI Application, January 10, 2011, or became disabled at any time thereafter." [Doc. #21-1 at 3]

hearing decision on June 26, 2013. [Tr. 131] On September 25, 2014, the Appeals Council denied review, thereby rendering ALJ Sweeney's decision the final decision of the Commissioner. [Tr. 1-7] The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, represented by counsel, timely filed this action for review and moves to reverse the Commissioner's decision. On appeal, she asserts the following arguments:

1. The ALJ's step two determinations are not supported by substantial evidence;

2. The ALJ improperly weighed the opinion evidence;

3. The ALJ's credibility findings are not supported by substantial evidence;

4. The ALJ's Residual Functional Capacity ("RFC") determination is not supported by substantial evidence; and

5. The ALJ erred at step five of the sequential evaluation.

On January 21, 2016, the Court held oral argument on the pending cross motions. [Doc. #36] Counsel for plaintiff personally appeared at oral argument and counsel for defendant, with the permission of the Court, [Doc. #33] appeared telephonically. During oral argument, plaintiff clarified the issues raised on appeal, as further addressed below.

III.  <u>**STANDARD OF REVIEW**</u>

The review of a social security disability determination involves two levels of inquiry. <u>First</u>, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. <u>Second</u>, the Court must decide whether the determination is supported by substantial evidence. <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review -- evaluating whether substantial evidence supports the ALJ's conclusion -- if the Court determines that the ALJ failed to apply the law correctly. <u>See</u> <u>Norman v. Astrue</u>, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of

the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alteration added) (citation omitted). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citation omitted). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, Civ. No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (internal citations omitted).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to

10

determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir. 2012) (citations and internal quotation marks omitted). **"[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports <u>the ALJ's decision</u>**." <u>Bonet ex rel. T.B. v. Colvin</u>, 523 F. App'x 58, 59 (2d Cir. 2013) (citations omitted).

## IV.  <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, Ms. Nieves must demonstrate that she is unable to work after a specified date "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §423(d)(1)(A). Such impairment must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §423(d)(2)(A)

11

(alterations added); see also 20 C.F.R. §§404.1520(c),

416.920(c) (requiring that the impairment "significantly limit[]

... physical or mental ability to do basic work activities" to

be considered "severe").

There is a familiar five-step analysis used to determine if

a person is disabled. See 20 C.F.R. §§404.1520, 416.920. In the

Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is
> currently engaged in substantial gainful activity. If
> he is not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly
> limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an
> impairment, the third inquiry is whether, based solely
> on medical evidence, the claimant has an impairment
> which is listed in Appendix 1 of the regulations. If
> the claimant has such an impairment, the Secretary
> will consider him disabled without considering
> vocational factors such as age, education, and work
> experience; the Secretary presumes that a claimant who
> is afflicted with a "listed" impairment is unable to
> perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per

curiam). If and only if the claimant does not have a listed

impairment, the Commissioner engages in the fourth and fifth

steps:

> Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the
> claimant's severe impairment, he has the residual
> functional capacity to perform his past work. Finally,
> if the claimant is unable to perform his past work,
> the Secretary then determines whether there is other
> work which the claimant could perform. Under the cases
> previously discussed, the claimant bears the burden of

proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (alteration added) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978) (citation omitted). "[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial

statute, to be broadly construed and liberally applied." Id.
(citation and internal quotation marks omitted).

**V.    THE ALJ'S DECISION**

Following the above-described five-step evaluation process,
ALJ Sweeney concluded that plaintiff was not disabled under the
Act. [Tr. 139-50] At step one, the ALJ found that plaintiff met
the insured status requirements of the Act through June 30,
2014, and she had not engaged in substantial gainful activity
since her alleged onset date of January 5, 2009. [Tr. 141-42]

At step two, the ALJ found that plaintiff had the severe
impairments of: anxiety, affective disorder, asthma, and
inflammatory polyarthropathy. [Tr. 142] The ALJ found that the
plaintiff's "alleged limitations due to diabetes mellitus,
chronic liver disease, and obesity[]" were not severe
impairments. [Tr. 142]

At step three, the ALJ found that plaintiff's impairments,
either alone or in combination, did not meet or medically equal
the severity of one of the listed impairments in 20 C.F.R. Pt.
404, Subpt. P, App. 1. [Tr. 142-43] The ALJ specifically
considered Listings 1.00 (musculoskeletal impairments), 12.04
(affective disorders), and 12.06 (anxiety disorders). [Tr. 142-
43] The ALJ also conducted a psychiatric review technique and
found that plaintiff had moderate limitations in her activities
of daily living, social functioning, and in concentration,

14

persistence, or pace, and no episodes of extended duration decompensation. [Tr. 142-43] At oral argument, counsel for the plaintiff conceded that plaintiff's impairments do not meet or medically equal any listed impairment, and that even if the plaintiff's non-severe impairments were found to be severe, she still would not meet any Listing.

Before moving on to step four, the ALJ found plaintiff had the RFC to perform light work. [Tr. 143] The ALJ further limited plaintiff to

> performing simple, routine, and repetitive tasks; in a work environment free of fast paced production requirements; involving only simple work-related decisions; with few, if any workplace changes. Claimant can have only brief, infrequent, and superficial contact with the public and occasional contact with supervisors and co-workers. She requires an environment[] free of concentrated exposure to extreme heat and extreme cold and concentrated exposure to environmental irritants such as flumes [sic], dusts [sic], and odors gases [sic].

[Tr. 143-44]

At step four, the ALJ found plaintiff unable to perform her past relevant work as a customer service representative for a newspaper. [Tr. 149] At step five, after considering plaintiff's age, education, work experience and RFC, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform. [Tr. 149]

## VI.   <u>DISCUSSION</u>

### A.   **Step Two Findings**

Plaintiff first argues that the ALJ erred at step two by finding that the following medical conditions were non-severe: Insulin-dependent Diabetes Mellitus, Stage IV Liver Disease, and obesity.[3]

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has an impairment or combination of impairments "of such severity" that it "significantly limits [her] physical or mental ability to do basic work activities[.]" <u>See</u> 20 C.F.R. §§404.1520(c), 416.920(c). At this step, "then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *4 (S.S.A. Jan. 1, 1985). Examples of "basic work activities" include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;

---

[3] Plaintiff also argues in the section of her brief otherwise focused on step two that the ALJ erred when he concluded that she lied to her therapist about her diagnosis and treatment for liver cancer and/or concluded that she was not credible. [Doc. #21-1 at 12-13] This argument is repeated in the section addressing the ALJ's credibility assessment and will be addressed therein. <u>Id.</u> at 15-16.

```
(4)  Use of judgment;
(5)  Responding   appropriately   to   supervision,   co-
workers and usual work situations; and
(6)  Dealing with changes in a routine work setting.
```

20 C.F.R. §§404.1521(b)(1)-(6), 416.921(b)(1)-(6).

> The Second Circuit has held that this step is limited
> to "screen[ing] out de minimis claims," Dixon v.
> Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995), but the
> "mere presence of a disease or impairment, or
> establishing that a person has been diagnosed or
> treated for a disease or impairment" is not, by
> itself, sufficient to render a condition "severe."
> Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y.
> 1995).

Zenzel v. Astrue, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012). "An

impairment ... is found 'not severe' and a finding of 'not

disabled' is made at this step when medical evidence establishes

only a slight abnormality or a combination of slight

abnormalities which would have no more than a minimal effect on

an individual's ability to work[.]" SSR 85-28, 1985 WL 56856, at

*3. "Steps one and two are intended to provide a swift yet

accurate system of identifying claims that should be denied."

Duncan v. Astrue, 796 F. Supp. 2d 326, 328 (D. Conn. 2011)

(overruled on other grounds).

    Plaintiff bears the burden at step two of showing that her

medical impairments were severe. See Talavera v. Astrue, 697

F.3d 145, 151 (2d Cir. 2012); 20 C.F.R. §§404.1512(a),

416.912(a).

### 1.   Diabetes

Plaintiff argues that "elevated blood sugar causes various severe complications, including loss of vision, heart disease, and neuropathy" and it is "likely" that her "liver disease was caused by her uncontrolled diabetes." [Doc. #21-1 at 11] However, plaintiff cites to no evidence of record demonstrating that such severe complications in fact afflicted her. Rather, plaintiff's argument is entirely speculative, and is based on citations to various medical websites and medical journal articles to support possible and/or "likely" conditions that could result from diabetes, rather than on any actual evidence of record. [Doc. #21-1 at 11, n.1-5]

Plaintiff cites to six treatment records that she asserts demonstrate that her diabetes was severe. However, none of these records undermines the ALJ's finding that the diabetes actually impaired the plaintiff's ability to function in any way. The statements in these records regarding the plaintiff's diabetes indicate that she was non-compliant with medical advice and needed to manage her glucose better, but there is no mention of any actual impact on her ability to function in a work place or otherwise.  Furthermore, each of these records predates plaintiff's laparoscopic sleeve gastrectomy in September 2012. [Doc. #21-1 at 10-11 (citing Tr. 1016-17 (3/22/12); 473

18

(4/8/09); 847 (11/26/08); 997 (11/14/09)] After the surgery and weight loss, plaintiff's diabetes went into remission. At her first post-operative examination on September 10, 2012, Dr. Benrahim noted that metformin and insulin were discontinued. [Tr. 52] On October 18, 2012, plaintiff weighed 184 pounds and Dr. Almeida noted that plaintiff's diabetes was "controlled off med." [Tr. 1223] In December 2012, plaintiff reported that her blood glucose levels were good, and she was "doing Zumba on a regular basis." [Tr. 1214] In January 2013, plaintiff weighed 170 pounds and Dr. Almeida noted that she was no longer taking any diabetic medication. [Tr. 1220] "There is no hyperglycemia." Id. Dr. Almeida noted that plaintiff reported "exercising every day." Id. In February 2013, plaintiff weighed 165 pounds and Dr. Almeida noted that her blood sugar was good. [Tr. 1218]

Plaintiff has failed to sustain her burden of showing at step two that her diabetes "significantly limited [her] physical ... ability to do basic work activities[.]" 20 C.F.R. §§404.1520(c), 416.920(c). The Court finds that there is substantial evidence of record to support the ALJ's step two finding as to diabetes.

### 2. Liver Disease

Plaintiff next argues that the ALJ erred in his determination at step two that her liver disease was non-severe.

19

[Doc. #21-1 at 11] With regard to plaintiff's fatty liver disease, the ALJ found that

> her only reported symptoms during this period is occasional right upper quadrant discomfort. In June 2011, the claimant underwent surgical removal of bile duct stones after experiencing increased pain and nausea (Exhibit 13F, 14F). This was accomplished without complication. By July 19, 2011, the claimant reported no ongoing symptoms and that she was "feeling great." Accordingly, the undersigned finds that this impairment caused only mild intermittent symptoms and is therefore not severe within the meaning of the regulations.

[Tr. 142]

The medical records confirm that plaintiff has been diagnosed with NASH (nonalcoholic steatohepatitis) Stage 3-4 liver disease with marked steatosis, mild steatohepatitis and bridging fibrosis, confirmed by a biopsy in June 2011. [Tr. 577, 971] After the removal of four bile duct stones in June 2011, plaintiff reported "feeling great." [Tr. 601, 640] The plaintiff's motion cites no evidence supporting any long-term limitation on her ability to work. The records reveal only a brief one-month period in or about December 2008 -- prior to her alleged disability onset date -- when she allegedly experienced "intermittent vomiting." [Tr. 472] The record reveals no functional complaints associated with her liver pain and no recurrence of bile duct stones after June 2011. Nor does plaintiff cite to any evidence of record to support her

contention that her "daily functioning" is affected by her liver disease. [Doc. #21-1 at 11]

Accordingly, plaintiff has failed to sustain her burden of showing at step two that her liver disease "significantly limited [her] physical ... ability to do basic work activities[.]" 20 C.F.R. §§404.1520(c), 416.920(c). The Court finds that there is substantial evidence of record to support the ALJ's step two finding as to liver disease.

### 3.   Obesity

Finally, plaintiff argues that the ALJ's finding at step two that her obesity is non-severe is error. She argues that "although she was no longer morbidly obese at the time of her hearing ... she lived with obesity-related complications, including Stage IV liver disease, even after losing 150 pounds." [Doc. #21-1 at 11-12] At oral argument, plaintiff argued that obesity-related complications were high blood glucose readings, insulin dependence, neuropathy and liver disease. The Court has already addressed the claims as to diabetes and liver disease.

The ALJ found: "While the claimant ultimately underwent laparoscopic sleeve gastrectomy for morbid obesity in September 2012, there is no evidence that this impairment resulted [in] functional limitations[.]" [Tr. 142] The ALJ's finding is supported by substantial evidence. Plaintiff cites no evidence in support of any functional limitations caused by her obesity,

even prior to surgery. Plaintiff underwent a gastric sleeve dissection on September 4, 2012. [Tr. 1162] Although her BMI prior to surgery was high, at the time of the ALJ's hearing, plaintiff testified that she weighed 165 pounds. [Tr. 184] At 165 pounds plaintiff's BMI was approximately 27 and she was no longer classified as obese. [Tr. 50, 52] Moreover, the mere fact that a claimant is obese is not enough to make this condition severe.

> The Clinical Guidelines recognize three levels of obesity. Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40. These levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss.

SSR 02-1P, 2002 WL 34686281, at *2 (S.S.A. Sept. 12, 2002).

Plaintiff has failed to sustain her burden of showing at step two that her asserted obesity "significantly limited [her] physical ... ability to do basic work activities[.]" 20 C.F.R. §§404.1520(c), 416.920(c). The Court finds that there is substantial evidence of record to support the ALJ's step two finding as to obesity.

**B.   Weighing of Opinion Evidence**

Plaintiff next argues that the ALJ erred in his evaluation of the opinion evidence of plaintiff's treating provider Angela

Tuers, LCSW. See Tr. 669-71 (Mental Impairment Questionnaire
dated November 25, 2011). The ALJ found, in part:

> As for the opinion evidence, Angela Tuers, LCSW, the
> claimant's group counselor from June 16, 2011 through
> April 2012, completed a medical source statement on
> November 25, 2011 regarding the claimant's residual
> capacity that indicates that the claimant is more
> limited than has been assessed in this finding
> (Exhibit 17F, 21F). However, Counselor Tuers is not an
> "acceptable medical source" within the meaning of the
> regulations (SSR 06-03p). However, her opinion as "an
> other treating source" is entitled to careful
> consideration. ... The undersigned has given Counselor
> Tuers's opinion significant evidentiary weight because
> her observations are not based on special knowledge
> she has gained as a treating, primary care provider.
> Indeed, as noted above, the claimant falsely gave
> counselor Tuers the impression that she was managing
> life threatening liver cancer during the period of
> treatment. More importantly, Counselor Tuers's opinion
> is contradicted by her own treatment notes and
> contains internal contradictions. Although counselor
> Tuers notes problems with claimant's ability to
> sustain hygiene, indicating on this form that it is a
> "very serious problem," her treatment notes document
> that the claimant sustained excellent hygiene during
> the period addressed. Likewise, counselor Tuers notes
> on this form that the claimant has "excellent social
> skills" but then assessed that she has a "very serious
> problem" getting along with others. Accordingly, the
> undersigned finds that her opinion does not provide
> any significant insight into the severity of the
> claimant's impairments and how they affect his ability
> to function.

[Tr. 148] [sic]

As an initial matter, and as discussed above, the Court
finds that LCSW Tuers is not an "acceptable medical source"
under the regulations and not entitled to treating physician
deference. See 20 C.F.R. §§404.1513, 416.913. The ALJ properly

found that her opinion was "entitled to careful consideration"
as "an other treating source." [Tr. 148] "Only acceptable
sources of medical information can provide evidence to establish
a claimant's impairment." Malloy v. Astrue, No.
3:10CV190(MRK)(WIG), 2010 WL 7865083, at *21 (D. Conn. Nov. 17,
2010) (citing 20 C.F.R. §§404.1513(a), 416.913(a)). "Only
licensed physicians, licensed osteopaths, licensed or certified
psychologists, licensed optometrists, licensed podiatrists, and
qualified speech-language pathologists are considered
'acceptable sources of medical information.'" Id. LCSW Tuers, by
contrast, is a Licesed Clinical Social Worker, and as such, is
not an "acceptable medical source" for purposes of "establishing
plaintiff's medically determinable impairments." Rodriguez, 2012
WL 4477244 at *36. Rather, LCSW Tuers is considered an "other
source," and as such, her opinion does not warrant controlling
weight. See Grenier v. Astrue, 298 F. App'x 105, 108 (2d Cir.
2008) ("[W]hile the ALJ is certainly free to consider the
opinions of these 'other sources' in making his overall
assessment of a claimant's impairments and residual abilities,
those opinions do not demand the same deference as those of a
treating physician." (citation omitted)). Accordingly, the ALJ's
designation of LCSW Tuers' opinion as an "other source" is not
error.

Plaintiff next argues that the ALJ made conflicting statements regarding the weight assigned to LCSW Tuers' opinion and that his ruling is not sufficiently specific to permit meaningful review. As discussed at oral argument, it is apparent from the ALJ's full discussion of LCSW Tuers' opinions that the ALJ's ruling includes a typographical error. The opinion states: "The undersigned has given Counselor Tuers' opinion significant evidentiary weight because her observations are not based on special knowledge she has gained as a treating, primary care provider." [Tr. 148] The context of the sentence and the remainder of the ALJ's assessment of LCSW's opinion makes clear that this sentence should have read: "The undersigned has **not** given Counselor Tuers' opinion significant evidentiary weight[.]" Indeed, the ALJ's discussion of LCSW Tuers' evidence concludes by stating that "her opinion does not provide any significant insight into the severity of the claimant's impairments and how they affect [her] ability to function." [Tr. 148] The Court can reasonably conclude that the ALJ omitted the word "not" from "significant evidentiary weight" and that this omission is a typographical error. Read contextually, the ALJ's typographical omission is harmless error.

The ALJ noted that LCSW Tuers' opinion was contradicted by her contemporaneous treatment records and that the opinion contained internal contradictions. See id. For example, in

25

assessing plaintiff's activities of daily living, LCSW Tuers found that plaintiff had a "very serious problem" with taking care of personal hygiene and caring for her own physical needs such as dressing and eating. [Tr. 670] However, she added a handwritten comment that plaintiff had "no problem w/ hygiene/ADL's." [Tr. 670] The ALJ's statement that "treatment notes document that the claimant sustained excellent hygiene during the period addressed" is supported by the record. Any claim by LCSW Tuers that plaintiff could not take of her personal hygiene is also contradicted by Rushford treatment records indicating that plaintiff was "well groomed[.]" [Tr. 95, 97, 674, 676, 743, 746, 749, 908, 910, 912, 914, 916, 918, 1129, 1131, 1133, 1175, 1177, 1179, 1182]

Similarly, in assessing social interaction, LCSW Tuers stated that plaintiff had a "very serious problem" getting along with others without distracting them or exhibiting behavioral extremes. [Tr. 671] However, she added a handwritten comment that plaintiff had "excellent social skills." [Tr. 671] Rushford treatment records report that plaintiff was usually "friendly and cooperative." [Tr. 908, 910, 912, 914, 916, 918]

The ALJ also specified that he discounted LCSW Tuers' opinion because "plaintiff falsely gave counselor Tuers the impression that she was managing life threatening liver cancer during the period of treatment." [Tr. 148] The ALJ correctly

26

found that LCSW Tuers' opinion was based on false information provided by plaintiff. Plaintiff reported to LCSW Tuers in group therapy that she had Stage IV liver cancer on multiple occasions, [Tr. 147, 795, 797]; that her cancer may have spread to her bladder, [Tr. 808, 810, 812, 901, 903, 907]; and may require a liver transplant. [Tr. 893] As a result, LCSW Tuers included liver and bladder cancer in her diagnosis of the plaintiff. [Tr. 669] However, plaintiff later admitted she was not diagnosed with liver cancer.[4] [Tr. 147, 194, 263]

LCSW Tuers also opined in her 2011 report that plaintiff had problems concentrating and was forgetful since experiencing a trauma ten years earlier, that is, the death of her son. [Tr. 671] However, the evidence of record demonstrates that plaintiff

---

[4] A disability examiner contacted LCSW Tuers regarding her Mental Impairment Questionnaire. LCSW Tuers first told the examiner that plaintiff had cancer "'her whole life' but when [the examiner] told her there is absolutely no evidence of cancer in the medical record she said that she only wrote what the client reported and that this is not a firm, nor medical diagnosis." [Tr. 263] The disability examiner called plaintiff in an effort

> to develop liver cancer with mets [metastasis] as a possible impairment. Clmt reports that she never got diagnosed with cancer, and she doesn't know why this was written on her report. She no longer sees this therapist either. She denied cancer as an issue. She reports she switched therapists because of complaints about the clinician[.]

[Tr. 263 (report dated 2/23/12)] Plaintiff transferred out of Tuers' Womens Trauma group at the beginning of 2012. [Tr. 914, 920]

successfully worked for a significant time after the death of her son, including working from 2005 through 2009 at the same job. [Tr. 450] She also reported other work and volunteer activities during this period. See Tr. 482 (starting new job as a paralegal); Tr. 969 (helping at her sister's hair salon); Tr. 931, 944 (discussing her plans to attend the closing of her salon in March 2012); Tr. 891, 893 (noting plaintiff will start volunteering at CCMC with young children that have cancer); Tr. 1060 (volunteering at the Children's Hospital).

The ALJ properly found that as an "other treating source," Counselor Tuers' opinion was both internally inconsistent and inconsistent with the evidence of record, including her own treatment notes. The Court finds that the ALJ did not substitute his judgment for that of LCSW Tuers and his evaluation of her opinion is not error.

### C.   Credibility Findings

Plaintiff next argues that the ALJ did not properly determine her credibility. The ALJ is required to assess the credibility of a plaintiff's subjective complaints in a two-step process. See generally 20 C.F.R. §§404.1529, 416.929. First, the ALJ must determine whether the record demonstrates that the plaintiff possesses a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. See 20 C.F.R. §§404.1529(b), 416.929(b). Second, the ALJ must

28

assess the credibility of the plaintiff's complaints regarding the intensity, persistence, or functionally limiting effects of the symptoms. See 20 C.F.R. §§404.1529(c), 416.929(c). To do this, the ALJ must determine if objective evidence alone supports the plaintiff's complaints; if not, the ALJ must consider other factors described in 20 C.F.R. §§404.1529(c) and 416.929(c). See Skillman v. Astrue, No. 08CV6481, 2010 WL 2541279, at *6 (W.D.N.Y. June 18, 2010). These factors include: "(1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain; (3) any precipitating or aggravating factors; and (4) the type, dosage, effectiveness, and side effects of any medication taken by claimant to alleviate the pain." Id. (citations omitted).

"Assessment of the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record." SSR 96-7p, 1996 WL 374186, at *5 (S.S.A. July 2, 1996). Furthermore, an ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id. at *4. "Put another way, an ALJ must

assess subjective evidence in light of objective medical facts and diagnoses." <u>Williams</u>, 859 F.2d at 261.

Here, the ALJ found that the plaintiff's claims regarding the effects of her symptoms were not "entirely credible." [Tr. 145] In reaching this conclusion the ALJ properly considered the available objective medical evidence, as well as other evidence of record. <u>See</u> 20 C.F.R. §§404.1529(c)(2); 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms, such as pain, may have on your ability to work").

The ALJ provided a thorough discussion of the basis for his credibility finding. [Tr. 144-147] After summarizing plaintiff's testimony, the ALJ reviewed the objective evidence of record, finding that the record did not support the plaintiff's claims that her chronic pain produced the functional limitations she claimed. [Tr. 145] The ALJ discussed the plaintiff's history of inconsistent statements related to her use of opiate pain medications, and a previous finding by at least one doctor that she had altered her opiate prescription. [Tr. 145-46] The ALJ reviewed the full longitudinal medical record, finding that it did not reveal "chronic factors that would have limited claimant from performing, at least, limited work" with certain restrictions. [Tr. 146]

30

With regard to the plaintiff's mental impairments, the ALJ found a similar history of inconsistent and false statements by the plaintiff. In particular, the ALJ noted that the plaintiff had presented with an "essentially normal mental status exam" in 2011 and that she had also failed to truthfully report her history with opiate medications. [Tr. 147] The ALJ noted that the plaintiff had claimed she "essentially does nothing during the day," but then detailed the daily activities she did perform, as documented by the record. [Tr. 147] Finally, and perhaps most significantly, the ALJ determined that the plaintiff had repeatedly lied to the treatment provider, LCSW Tuers, on whose opinion the plaintiff sought to rely for a finding of disability based on mental health impairments. [Tr. 147] Specifically, the plaintiff informed LCSW Tuers, during her group therapy sessions, that she had liver cancer that had spread to her bladder. This was false, as counsel conceded at oral argument.

Plaintiff's counsel argues that plaintiff's "mistaken belief that she had liver cancer is ... understandable[.]" [Doc. # 21-1 at 16] The ALJ conducted a thorough review of the records of the plaintiff's claims of liver cancer to her therapy group led by LCSW Tuers, and properly concluded that the plaintiff was intentionally misrepresenting her condition. [Tr. 147 n.1, 148] The plaintiff accurately reported her condition as liver disease

31

at her May 2011 intake to Rushford, but by June 30, 2011, she was telling LCSW Tuers and her therapy group that she had liver cancer [Tr. 759] and on August 11, 2011, she told Tuers and the group that she had cancelled a surgery for her cancer to care for her family. [Tr. 773] The plaintiff claimed that the cancer had spread to her bladder, and that she was waiting to find out if she would need chemotherapy or a liver transplant. [Tr. 1068, 1070, 1078, 1080] Plaintiff also told LCSW Tuers that "she had lung cancer at age 18 and then it spread to other parts of her body by age 23. Client has been living with cancer for over 30 years." [Tr. 1072] Again, this claim is not supported by the record.[5] The record supports the ALJ's finding that the plaintiff was not being truthful in these reports, and the ALJ reasonably found her to have diminished credibility as a result.

The ALJ identified a number of specific reasons for his credibility determination, which are supported by substantial evidence in the record, and the Court will not second-guess his decision. See Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir. 2010) ("It is the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the

---

[5] Indeed, a medical report from 2007 indicates that the plaintiff was explicitly advised by her doctor that she did not have liver cancer, as she appeared to have misinterpreted her diagnosis. [Tr. 854]

claimant."). Moreover, the ALJ had the opportunity to personally observe plaintiff and her testimony, something the Court cannot do. Accordingly, the Court finds no error in the ALJ's assessment of plaintiff's credibility.

### D.    RFC Determination

Plaintiff next argues that the ALJ's finding as to her RFC is not supported by substantial evidence. The ALJ found plaintiff had the RFC to "perform light work as defined in 20 C.F.R. §§404.1567(b) and 416.967(b)." [Tr. 143] He also found that plaintiff's ability to perform light work was

> limited to performing simple, routine, and repetitive tasks; in a work environment free of fast paced production requirements; involving only simple work-related decisions; with few, if any workplace changes. Claimant can have only brief, infrequent, and superficial contact with the public and occasional contact with supervisors and co-workers. She requires an environment[] free of concentrated exposure to extreme heat and extreme cold and concentrated exposure to environmental irritants such as flumes, dusts [sic], and odors gases.

Id.

A claimant's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). "The RFC determination is reserved for the commissioner. See 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2)." Walker v. Astrue, No. 08CV0828, 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010). "However, an ALJ's RFC assessment is a medical determination

that must be based on probative evidence of record. Accordingly, an ALJ may not substitute his own judgment for competent medical opinion." Id. (internal citations and quotation marks omitted).

Plaintiff contends that the ALJ erred by failing to consider the following limitations in determining the RFC: use of a cane for balance issues, neuropathy, inflammatory polyarthropathy, chronic back pain, chronic hip pain, and paresthesia of arms and legs.

First, as to the alleged need for a cane: "Courts have held that the burden to establish medical necessity for the use of an assistive device is with a claimant." Gordon v. Colvin, 1:14CV0541, 2015 WL 4041729, at *3 (N.D.N.Y. July 1, 2015) (citing Dahl v. Comm'r of Soc. Sec., No. 12CV0302, 2013 WL 5493677, *5 (N.D.N.Y Oct. 1, 2013)). The ALJ did not err in finding that the plaintiff failed to meet this burden.[6] Plaintiff testified that Dr. Almeida recommended she "try to use a cane" but conceded that Dr. Almeida did not prescribe it, and that she got herself the walker she presented with at the hearing. [Tr. 195-96] "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in the walking or

---

[6] The plaintiff cites only one page of the record in support of her argument that the use of a cane should have been included in the RFC, a self-report by the plaintiff in January 2013 that she needs a cane for balance. [Tr. 97]

standing, and describing the circumstances for which it is needed[.]" SSR 96-9p, 1996 WL 374185 at *7. The plaintiff provides no such documentation. The ALJ's determination that the RFC did not need to include restrictions related to use of a cane is supported by substantial evidence.

Plaintiff next argues that the ALJ failed to include limitations necessitated by neuropathy, inflammatory polyarthropathy, chronic back pain, chronic hip pain, and paresthesia of arms and legs in the RFC. Specifically, the plaintiff argues that the ALJ should have included limitations for grasping, fingering and feeling due to polyarthropathy; however, the plaintiff provides no citation to the record supporting such limitations. [Doc. #21-1 at 20]

The ALJ noted that with respect to plaintiff's alleged physical limitations, examination findings were generally unremarkable. For example, the ALJ noted that plaintiff treated at Gaylord Hospital for back and neck pain in the setting of inflammatory polyarthropathy after diagnostic x-rays were essentially normal. [Tr. 145] Treatment notes reveal findings of normal function, including normal gait and heel to toe pattern, intact muscle tone, normal reflexes and full passive range of motion in her extremities. [Tr. 480, 483, 486, 488, 490, 492, 494-95, 498, 500-01, 505, 507-08, 510-11, 513-14, 516-17, 520, 522, 524, 530] There are multiple notations in the record that

35

the use of medication seemed to control plaintiff's pain. [Tr. 488, 490, 497, 501, 516] It was also noted that plaintiff was "able to perform activities of daily living independently as a result of pain control." [Tr. 485, 519; see also Tr. 485, 516, 519 ("She is at a modified independent level with activities of daily living, transfers and mobility.")] Plaintiff visited the emergency department at MidState Medical Center twice in June 2011, and inspection of her back, extremities, chest, head and neck were normal. [Tr. 979-80, 982-83] The ALJ's RFC finding as to plaintiff's physical limitations is supported by substantial evidence in the record including the treatment notes of Dr. Almeida, Rushford, Community Health Center, Inc., MidState Medical Center, and Gaylord Physical Medicine and Rehabilitation. [Tr. 144-48]

The plaintiff does not make an argument in this section of her brief as to the inclusion in the RFC of limitations related to any mental health impairments. However, in the context of her step five argument, the plaintiff contends that the "records show that she would likely be off task at least 15% of the work day due to her flashbacks and anxiety[.]" [Doc. #21-1 at 23] The Court construes this as an argument that the RFC should have encompassed such a restriction.[7] Plaintiff cites to three medical

---

[7] At oral argument, counsel for the plaintiff argued that the ALJ was somehow required to find that plaintiff was likely to be

records in support of this assertion, all of which are based on her self-report to various clinicians. [Tr. 568, 610, 618] The first record cited is an intake report dated May 23, 2011, in which plaintiff reported that she suffered flashbacks related to her son's death. [Tr. 568] She made no claim that the flashbacks interfered with her ability to concentrate.[8] The second record cited is a progress note dated May 6, 2011, in which plaintiff reports feeling "a lot of anxiety and difficulty feeling calm" but again makes no claim as to an inability to focus or stay on task. [Tr. 610] Notably, the APRN recording the note observed the plaintiff's affect as "flat" rather than manic or anxious. Id. The third record cited is a progress report dated March 16, 2011, indicating that the plaintiff reported anxiety leading to insomnia, but again, no complaints of an inability to focus. [Tr. 618] The plaintiff has thus pointed to no evidence of

---

off-task 15 to 20% of the work day simply because the ALJ had asked a hypothetical of the VE that included that restriction. As the Court explained at oral argument, the ALJ is permitted to ask a range of hypothetical questions of the VE and is not bound to find an RFC that mirrors any particular hypothetical as long as his ultimate step five decision accurately reflects the VE's testimony. See Calabrese v. Astrue, 358 F. App'x 274, 276 (2d Cir. 2009) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as the facts of the hypothetical are based on substantial evidence and accurately reflect the limitations and capabilities of the claimant involved." (internal citations omitted)).

[8] On March 29, 2011, the plaintiff reported that she was not having flashbacks but worried they might return. [Tr. 700]

record revealing a likelihood that she would be off-task 15% of
the time or more in any work setting.

The ALJ's decision to not include the restriction sought by
the plaintiff is supported by substantial evidence. For example,
a Rushford mental status examination dated May 23, 2011, was
generally unremarkable, including no abnormality in plaintiff's
perception, verbal engagement and expression, memory, and
appearance. [Tr. 562-63] Plaintiff presented as "somewhat"
depressed and anxious, with "somewhat" impaired concentration
and attention span, and affected "somewhat" by obsessions and
compulsions, but was otherwise normal in all other evaluated
categories. Id. Plaintiff reported no phobias.[9] [Tr. 563] In a
Psychiatric Assessment dated July 5, 2011, plaintiff was found
to be oriented, calm, cooperative, and friendly with normal
speech, normal perception, and intact immediate recent and
remote memory. [Tr. 731-32] Plaintiff had no deficiency in her
fund of knowledge, calculations, concentration, insight or
judgment, and her intelligence was deemed "above average." [Tr.
732-33] Any concerns noted were described as "moderate" by the
intake Physician's Assistant, though the plaintiff described
herself as severely depressed. [Tr. 730-31; 733] Plaintiff's

---

[9] Six weeks later, plaintiff self-reported phobias of
"Agoraphobia, People, Claustrophobia." [Tr. 732]

2011 medication management notes reported her to be functioning normally though "experiencing depressed mood." [Tr. 746, 749]

The ALJ's RFC determination is supported by substantial evidence. The ALJ conducted a detailed review of the record, including plaintiff's testimony, treatment notes from plaintiff's medical providers, and LCSW Tuers' opinion. [Tr. 143-48] The ALJ specifically considered plaintiff's testimony which he permissibly found was "not fully credible," including her inconsistent statements, activities of daily living and the largely unremarkable physical and mental status examination findings throughout the record.

As noted earlier, the Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's capabilities; it is to review the ALJ's decision for any reversible error. "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet, 523 F. App'x at 59 (citations omitted). For the reasons stated, the Court finds no error in the ALJ's RFC assessment, which is supported by substantial evidence of record.

### E.   Step Five Findings

Plaintiff next contends that the ALJ erred at step five of the sequential evaluation because he failed to present evidence

39

of jobs which plaintiff could perform with her "actual" RFC and with her "actual" exertion and non-exertional limitations. [Doc. 21-1 at 20] In her brief and at oral argument, the plaintiff attempts to reargue the validity of the RFC as a part of her step five argument. The Court has found that the ALJ did not err in his RFC determination. Accordingly, the Court now considers only whether substantial evidence supports the ALJ's determination that the plaintiff is able to perform a significant number of jobs in the national economy with the RFC he assigned.

As discussed above, the ALJ properly weighed the medical evidence at issue, and his RFC and credibility findings are supported by substantial evidence of record. As to whether there are jobs that the plaintiff can perform, the ALJ properly relied on the testimony of the Vocational Expert, which an ALJ is entitled to do. See Talavera v. Astrue, 500 F. App'x 9, 12 (2d Cir. 2012); Claymore v. Astrue, 519 F. App'x 36, 39 (2d Cir. 2013). The VE testified that given the restrictions eventually included by the ALJ in the RFC, the plaintiff would be able to perform occupations such as hand packer, production worker, and production inspector. [Tr. 214-17] The VE further estimated that jobs in each of these positions are available in substantial numbers in Connecticut and nationally. [Tr. 215-17]

Plaintiff argues that she cannot perform the jobs of hand packer, DOT Code: 559.687-014, and production worker, DOT Code: 783.684-018, because these jobs entail exposure to environmental irritants and/or extreme heat that are precluded by the ALJ's RFC. [Doc. #20-1 at 22-23] The Court disagrees. The ALJ squarely addressed whether these jobs could be performed with a limitation to "environments free of concentrated exposure to extreme heat and extreme cold and concentrated exposure to environmental irritants" such as fumes, odors, dust, and irritants in his hypothetical questions to the VE. [Tr. 215] Neither DOT job description states that the job involves concentrated exposure to extreme heat/cold or environmental irritants. Further, the VE was aware of these limitations and stated that all of the jobs he identified would be available with these restrictions. [Tr. 215-17] There is no error as to that issue.

With respect to the job of "Inspector-Packer" DOT Code: 784.687-042, plaintiff argues that the job requires skills and reasoning that exceed the ALJ's RFC limitation of "simple, work-related decisions," [Tr. 215-16] This job is assigned a "Reasoning Level 2" in the DOT listings. "A number of courts have found that a limitation of simple tasks or instructions is consistent with [General Education Development] GED level 2 reasoning." Jones-Reid v. Astrue, 934 F. Supp. 2d 381, 408 (D.

Conn. 2012) (citation omitted), aff'd, 515 F. App'x 32 (2d Cir. 2013). "[A] reasoning level of 2 is defined as an ability to 'apply commonsense understanding to carry out detailed but uninvolved written or oral instructions' and to 'deal with problems involving few concrete variables in or from standardized situations.'" Clark v. Colvin, No. 5:14CV0073(TJM), 2015 WL 1446937, at *10 (N.D.N.Y. Mar. 23, 2015) (quoting DOT, Appendix C) (citing cases), report and recommendation adopted sub nom., Clark v. Comm'r of Soc. Sec., No. 5:14CV73, 2015 WL 1446987 (N.D.N.Y. Mar. 30, 2015). Plaintiff's contention that she is unable to perform at level 2 reasoning is not supported by the evidence of record. Plaintiff has an Associate's Degree in Communications and has had prior employment in customer service, reporting, translation and some accounting work. [Tr. 189] There is no error as to this issue.

In sum:

> The ALJ's hypothetical questions posed to the VE was supported by substantial evidence in the record. Thus, at Step 5 in the sequential evaluation process, the ALJ was entitled to rely on the testimony of the VE in finding that plaintiff was not under a "disability" as defined in the Social Security Act because there were a significant number of jobs in the national and local economy that [she] could perform. See Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d Cir. 1983).

Wright v. Barnhart, No. 3:05CV0119(MRK)(WIG), 2006 WL 2927089, at *11 (D. Conn. Aug. 4, 2006), subsequently aff'd sub nom. Wright v. Comm'r of Soc. Sec., 259 F. App'x 342 (2d Cir. 2007).

Accordingly, the Court finds no error in the ALJ's reliance on the VE's testimony in support of his step five determination.

## VI.    CONCLUSION

For the reasons set forth herein, plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand is **DENIED**. [**Doc. #21**] Defendant's Motion to Affirm the Decision of the Commissioner is **GRANTED**. [**Doc. #26**]

This is a Recommended Ruling. See Fed. R. Civ. P. 72(b)(1). Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of being served with order. See Fed. R. Civ. P. 72(b)(2). **Failure to object within fourteen (14) days may preclude appellate review.** See 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b); and D. Conn. L. Civ. R. 72.2; Small v. Secretary of H.H.S., 892 F.2d 15 (2d Cir. 1989) (per curiam); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995).

SO ORDERED at New Haven, Connecticut, this 10th day of February, 2016.

/s/
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE