UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANNABELLE NIEVES,   :<br>   Plaintiff,       :<br>                      :<br>v.                    :<br>                      :<br>CAROLYN W. COLVIN,    :<br>COMMISSIONER OF SOCIAL :<br>SECURITY,             :<br>   Defendant.       : | Civil Action No. 3:14-cv-01736 (VLB)<br><br>March 16, 2017 |

**RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S
<u>MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER</u>**

This is an administrative appeal following the denial of the Plaintiff Annabelle Nieves' application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). It is brought pursuant to 42 U.S.C. §§ 405(g).

Plaintiff has moved for an order reversing the decision of the Commissioner of the Social Security Administration ("Commissioner"), or remanding the case for rehearing. [Dkt. No. 21.] The Commissioner, in turn, has moved for an order affirming the decision. [Dkt. No. 26.] Magistrate Judge Sarah A. L. Merriam rendered a Recommended Ruling on the Cross Motions, recommending that Plaintiff's Motion to Reverse the Decision of The Commissioner be denied, and recommending Defendant's Motion to Affirm be granted. [Dkt. No. 38.] Plaintiff filed an Objection to the Recommended Ruling [Dkt. No. 39], and the Commissioner filed a Response in favor of the Recommended Ruling. [Dkt. No. 40.]

For the following reasons, the Recommended Ruling is adopted, Plaintiff's Motion for an Order Reversing or Remanding the Commissioner's Decision [Dkt. No. 21] is DENIED, and the Commissioner's Motion to Affirm that Decision [Dkt. No. 26] is GRANTED.

I.  Background

The Court presumes the parties' familiarity with the lengthy proceedings below and the record before this Court.  Therefore, only the facts relevant to the Plaintiff's objections are repeated here.

    A.  Procedural History

The Plaintiff filed concurrent applications for DIB and SSI on January 10, 2011, alleging disability as of January 5, 2009.  [Dkt. No. 17 ("Tr.") at 139.]  These applications were initially denied on August 2, 2011, and denied a second time upon reconsideration on February 28, 2012.  *Id.*  Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") on April 25, 2012.  *Id.*  On February 27, 2013, ALJ Edward F. Sweeney held a hearing at which the Plaintiff appeared and testified.  [Tr. at 178-225.]  On April 26, 2013, ALJ Sweeney found that the Plaintiff was not disabled, and denied her claims.  [Tr. at 139-50.]  Plaintiff filed a timely request for review of the hearing decision on June 26, 2013.  [Tr. 131.]  On September 25, 2014, the Appeals Council denied review.  [Tr. at 1-7.]

Plaintiff, represented by counsel, timely filed an action for review of the final decision of the Commissioner with the District Court on November 20, 2014.  [Dkt. No. 1.]  On January 21, 2016, oral argument on the parties' cross motions was held before Judge Merriam.  She issued a recommended ruling denying

**Plaintiff's Motion for Order Reversing the Decision of the Commissioner and granting Defendant's Motion to Affirm the Decision of the Commissioner on February 10, 2016.  [Dkt. No. 38.]**

      **B.  Factual Background**

Plaintiff sought and received psychological treatment at the Rushford clinic.  Upon intake at the Rushford clinic, Plaintiff reported that she suffered from depression and post-traumatic stress stemming from the 2000 murder of her son and a history of abusive relationships.  [Tr. at 730, 735.]  Plaintiff received psychological counseling in a "women's trauma group" led by Ms. Tuers twice weekly from May 23, 2011 to November 18, 2011.  [Tr. at 669.]  Throughout the time Plaintiff participated in the women's trauma group, Ms. Tuers observed that the Plaintiff presented as "attentive" or "cooperative," [Tr. at 757, 758, 761, 764, 767, 770, 777, 780, 783, 793], and was occasionally a "positive influence" [Tr. at 766, 768, 771, 773, 779, 782, 788, 790, 795].  Other Rushford records indicate that the Plaintiff was often "friendly and cooperative," [Tr. at 908, 910, 912, 914, 916, 918], and was "well groomed," [Tr. at 95, 97, 674, 676, 743, 746, 749, 908, 910, 912, 914, 916, 918, 1129, 1131, 1133, 1175, 1177, 1179, 1182].

Ms. Tuers completed a Mental Impairment Questionnaire on the Plaintiff's behalf.  [Tr. at 668.]  In it, she stated that the Plaintiff had three diagnoses:  (1) depression; (2) post-traumatic stress disorder; and (3) stage IV liver cancer.  [Tr. at 669.]  As ALJ Sweeney and Judge Merriam both noted, the questionnaire is rife with internal inconsistencies.  [Dkt. No. 38 at 15-16; Tr. at 148.]  For example, while Ms. Tuers circled responses in the "Activities of Daily Living" section

indicating that the Plaintiff had "a very serious problem" with "taking care of personal hygiene," "caring for physical needs," and "using good judgment," she added a comment immediately afterward that read, "No problem w/ hygiene/ADL's." [Tr. at 670.] Similarly, in the "Social Interactions" section, Ms. Tuers circled responses to indicate that the Plaintiff had "a very serious problem" "[g]etting along with others without distracting them or exhibiting behavioral extremes," but then commented that the Plaintiff had "[e]xcellent social skills." [Tr. at 671.]

Additionally, Plaintiff told Ms. Tuers that she suffered from and was receiving treatment for liver cancer, [Tr. at 759, 773, 795], that she "canceled a needed surgery for herself to deal with her cancer to take care of [her] brother," [Tr. at 773], and that the cancer may have spread to her bladder, [Tr. at 808, 810, 812]. Consistent with ALJ Sweeney's and Judge Merriam's opinions, the record does not support a liver cancer diagnosis. [Dkt. 38 at 26-27; Tr. at 147.] A disability examiner reported that the Plaintiff denied ever having been diagnosed with cancer. [Tr. at 263.] And Ms. Tuers told the examiner that she did not intend to state that liver cancer was a firm, medical diagnosis, and that she included the diagnosis her questionnaire solely based on the Plaintiff's statements. [Tr. at 263.]

ALJ Sweeney determined that as an "other treating source," Ms. Tuers' opinion was "entitled to careful consideration." [Tr. at 148.] However, ALJ Sweeney ultimately determined that Ms. Tuers' observations were not entitled to "significant evidentiary weight because her observations are not based on

4

special knowledge she has gained as a treating, primary care provider." [Tr. at 148.] In support, ALJ Sweeney cited the questionnaire's inconsistencies regarding the Plaintiff's hygiene and social skills, and Ms. Tuers' mistaken impression that the Plaintiff "was managing life threatening liver cancer during the period of treatment." [Tr. at 148.]

Plaintiff's objection to the recommended ruling raises just one issue: whether Judge Merriam erred when she held that the opinion of Angela Tuers, a Licensed Clinical Social Worker, was not entitled to controlling weight. Because the Plaintiff has not objected to any other issue addressed in Judge Merriam's comprehensive and well-reasoned ruling, the Court refers the parties to the Recommended Ruling for all facts relevant to other issues raised in the Plaintiff's administrative appeal.

## II.  Legal Standard

A magistrate judge's ruling on a dispositive matter is reviewed by the district judge de novo. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(3). The Court may adopt, reject, or modify, in whole or in part, a magistrate judge's recommended ruling. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.§ 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the Court may not make a *de novo* determination of whether

5

a plaintiff is disabled in reviewing a denial of disability benefits.  *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching his/her conclusion, and whether the decision is supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  Therefore, absent legal error, this Court may not set aside the decision of the Commissioner if it is supported by substantial evidence.  *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position.  *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Substantial evidence must be "more than a scintilla or touch of proof here and there in the record."  *Williams*, 859 F.2d at 258.

The Social Security Act establishes that benefits are payable to individuals who have a disability.  42 U.S.C. § 423(a)(1).  "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ."  42 U.S.C. § 423(d)(1).  In order to determine whether a claimant is disabled within the meaning of the SSA, the

6

ALJ must follow a five-step evaluation process as promulgated by the Commissioner.[1]

A person is disabled under the Act when their impairment is "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  *Id.*[2]

## III.  Discussion

Magistrate Judge Merriam's Recommended Ruling would sustain ALJ Sweeney's ruling on all grounds on which Plaintiff moved for reversal.  Those grounds include whether: (1) the ALJ erred at step two of the sequential evaluation by finding that the Plaintiff did not have a severe impairment; (2) the

---

[1] The five steps are as follows: (1) The Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. I f the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.  20 C.F.R. § 416.920(a)(4)(i)—(v).

[2] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work."  *Id.*

7

**ALJ properly weighed the opinion evidence of Plaintiff's counselor, Licenced Clinical Social Worker Angela Tuers; (3) the ALJ erred in finding that the Plaintiff and Counselor Tuers were not credible; (4) the ALJ properly determined Plaintiff's Residual Functional Capacity; and (5) the ALJ erred when it found that the Plaintiff could perform other work.  [Dkt. No. 21.]**

As noted above, the only issue presented in Plaintiff's Objection to the Recommended Ruling is whether the ALJ assigned Counselor Tuers' opinions the appropriate weight.  [Dkt. No. 39-1 at 1-2.]  Plaintiff does not object to any other findings in the Recommended Ruling.  The Court has reviewed the full record of the case including applicable principles of law, and has reviewed Magistrate Judge Merriam's Recommended Ruling.  The Court adopts the portions of the Recommended Ruling to which Plaintiff has not objected.  The scope of the Court's discussion of its de novo review of the ALJ's decision is limited to Plaintiff's stated objections to the recommended ruling.

Plaintiff argues first that Counselor Tuers' opinions "must be entitled to substantial or controlling weight, as a mental health professional." *Id.* at 5. Second, she argues that the ALJ Sweeney's decision to give "not significant evidentiary weight" or "not substantial" weight to Ms. Tuers' opinions was insufficiently specific "to make clear to subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight."  [Dkt. No. 39-1 at 2 (quoting *Schupp v. Barhart*, No. 3:02-cv-103, 2004 WL 1660579, at *13 (D. Conn. March 12, 2004)).]

**A. Weight Afforded to Opinions of a Licensed Clinical Social Worker ("LCSW")**

A "treating physician's" opinion is "given 'controlling weight' as long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  *Burgess v. Astrue,* 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2*)); see also Mariani v. Colvin*, 567 F. App'x 8, 10 (2d Cir. 2014) (holding that "[a] treating physician's opinion need not be given controlling weight where it is not well-supported or is not consistent with the opinions of other medical experts" where those other opinions amount to "substantial evidence to undermine the opinion of the treating physician").  "The regulations further provide that even if controlling weight is not given to the opinions of the treating physician, the ALJ may still assign some weight to those views, and must specifically explain the weight that is actually given to the opinion." *Schrack v. Astrue*, 608 F. Supp. 2d 297, 301 (D. Conn. 2009) (citing *Schupp v. Barnhart*, No. Civ. 3:02CV103(WWE), 2004 WL 1660579, at *9 (D. Conn. Mar. 12, 2004)).  It is "within the province of the ALJ to credit portions of a treating physician's report while declining to accept other portions of the same report, where the record contained conflicting opinions on the same medical condition." *Pavia v. Colvin*, No. 6:14-cv-06379 (MAT), 2015 WL 4644537, at 4 (W.D.N.Y. Aug. 4, 2015) (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

As an LCSW, Counselor Tuers is not a "treating source" under the social security regulations.  10 C.F.R. §§ 404.1513(a)(1)-(5), 416.913(a)(1)-(5) (listing acceptable medical sources who can provide evidence to establish an

9

impairment, none of which include clinical social workers); *Luna v. Colvin*, No. 3:14CV00145 (HBF), 2016 WL 4408987, at *6 (D. Conn. Aug. 17, 2016) (LCSW who "provided therapy from April 2010 through July 2012, both individually and in group therapy settings and as an outpatient and in intensive outpatient care" was not a "treating source under the regulations"); *cf. Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (stating a nurse practitioner's opinion "does not warrant the same deference as a physician's opinion" in a disability analysis). Her opinions therefore need not be given controlling weight. However, even if Ms. Tuers were a "treating source" under the regulations, her opinions would not be entitled to controlling weight, because substantial evidence supports ALJ Sweeney's determination that Ms. Tuers' opinions were internally inconsistent and conflicted with other record evidence concerning the Plaintiff's psychological conditions.

While Plaintiff concedes that Ms. Tuers is *not* an "acceptable medical source" under the regulations, [Dkt. No. 39-1 at 5], Plaintiff argues that a treating LCSW's opinion is entitled to controlling weight under *DeLeon v. Secretary of Health and Human Services*, 734 F.2d 930, 937-38 (2d Cir. 1984). Plaintiff argues that the case stands for the proposition that the opinion of any type of mental health professional "is entitled to controlling weight if the mental health professional satisfies the criteria in 20 C.F.R. § 404.1527 for determining weight." [Dkt. 39-1 at 4]. This interpretation mischaracterizes *DeLeon*'s holding. In *DeLeon*, the court stated that an ALJ erred by failing to give controlling weight to the opinions of a treating psychiatrist. *DeLeon*, 734 F.2d at 738-39. Psychiatrists,

10

of course, are listed as "acceptable medical sources" under 20 C.F.R. § 404.1513. The court's holding that a treating psychiatrist's opinions should be given controlling weight is neither instructive nor binding precedent regarding the appropriate weight to give an "other source," like an LCSW.

The plain language of 20 C.F.R. § 404.1527 is also inconsistent with Plaintiff's interpretation of *DeLeon.* It states that the weight afforded to medical opinions should be determined by considering the examining relationship, the treatment relationship, the length of treatment, the nature and extent of treatment, evidence in support of the medical opinion, consistency with the record, specialty in the medical field, and any other relevant factors. 20 C.F.R. § 404.1527(c). The regulation specifically refers to "medical opinions," which are defined as statements from "acceptable medical sources" that reflect judgments about the nature and severity of an impairment. 20 C.F.R. § 404.1527(a)(2). Because, as the Plaintiff concedes, LCSWs are not "acceptable medical sources," an ALJ is not required to apply the factors set forth in 20 C.F.R. § 404.1527 to determine how much weight to afford an LCSW's opinions.

B. Specificity of Weight Afforded to LCSW's Opinions

Plaintiff next argues that ALJ Sweeney's weight determination was insufficiently specific to permit meaningful review. The failure "to explicitly state the weight assigned to [an] opinion" need not be reversible error where an ALJ has "discussed [the source's] opinion at length." *See Freitas v. Colvin*, No. 3:14CV789(DFM), 2016 WL 7407706, at *5 (D. Conn. Dec. 22, 2016) (holding that an ALJ "evaluated [a source's] opinions in accordance with regulations," where she

"fail[ed] to explicitly state the weight he assigned to the opinion" of the source, but "discussed [the source's] opinion at length").  Here, ALJ Sweeney made thorough findings about the contradictions within and between Ms. Tuers' questionnaire responses and her patient notes.  Furthermore, the Plaintiff has cited no cases that require specific findings regarding the weight afforded to "other sources."  [Dkt. 39-1 at 2.]  The only case the Plaintiff cites in support, *Schupp v. Barnhart*, 2004 WL 1660579, refers specifically to "treating sources" and "medical opinions," which must be or be given by "acceptable medical sources."  Because Ms. Tuers' is not an "acceptable medical source," she is not a "treating source" and she cannot offer "medical opinions," as they are defined by the regulations.

Because the Court concludes that ALJ Sweeney's decision to not give Ms. Tuers' assessment controlling weight is supported by substantial evidence, Plaintiff's motion to reverse on this ground is denied and the Commissioner's motion to affirm is granted.  The Recommended Ruling's explanation of this point is adopted.

IV. Conclusion

For the reasons set forth above, Plaintiff's Motion for an Order Reversing or Remanding the Commissioner's Decision [Dkt. No. 21] is DENIED and the Commissioner's Motion to Affirm that Decision [Dkt. No. 26] is GRANTED.  The Recommended Ruling's thorough evaluation of the medical record and motions to reverse and affirm [Dkt. No. 38] is adopted in full.

It is so ordered, at Hartford, Connecticut.

_____

**Vanessa L. Bryant, U.S.D.J.**